# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### WESTERN DIVISION

IN RE:                                                                                                                          BK 06-71769-CMS-11

**ROLAND PUGH CONSTRUCTION, INC.,**

      **DEBTOR.**

### MEMORANDUM OF DECISION

This matter was before the court on Chapter 11 debtor Roland Pugh Construction, Inc.'s (Pugh Construction's) request for approval of payment of $130,821.62 in prepetition vendors' bills due when it filed its December 1, 2006 bankruptcy petition; and on the objection of creditors/plaintiffs, State of Alabama, et al., to that payment. The court has reviewed the record in the context of applicable law and finds the debtor's motion is due to be **DENIED**; and the objection is due to be **SUSTAINED**.

### FINDING OF FACTS

The court has drawn this summary of pertinent, and undisputed, facts from hearing testimony and evidence; and from the public files of BK 06-71769 and the related AP 06-70045.

Roland Pugh Construction, Inc. filed this Chapter 11 voluntary petition on December 1, 2006. As clearly expressed in pleadings and representations to the court, the troubled construction company was already shutting down and proceeding toward liquidation at commencement of the bankruptcy. Shutdown became inevitable after Pugh Construction became unable to obtain bonds for new construction projects because of an ongoing criminal prosecution.

Substantively, the case was initiated as a liquidating Chapter 11, serving the same function as a Chapter 7 case; but with Pugh Construction, as debtor-in-possession, functioning as its own trustee. The debtor is not seeking reorganization to continue its own operation, or even to keep a failing business alive until it can be sold as a going concern (another type of

1

liquidating Chapter 11).

Evidence showed that Pugh Construction began liquidating its assets prepetition and is continuing toward a final liquidation as evidenced by its January 2, 2007 motion to sell remaining corporate property at public auction. (BK Doc. 40)

A review of the debtor's schedules and pleadings showed that Pugh Construction's Chapter 11 case was not precipitated by business debt problems, but by a 2005 civil lawsuit initiated by Arthur Green, district attorney for the Bessemer division of Jefferson County.

Green's quo warranto suit sought judicial dissolution of the construction firm, attorneys' fees, and other relief. The civil filing came May 27, 2005, after a federal grand jury had indicted Pugh Construction on February 7, 2005. The initial federal criminal charges, and superseding indictments returned in July and August of 2005, followed an investigation of bribery allegations against various Jefferson County officials and private companies doing business with the county, principally in sewer construction.

On June 26, 2005, Jefferson County Circuit Judge Dan C. King entered an order prohibiting Pugh Construction from transferring or otherwise depleting corporate assets. Additionally, Lauretta Harrell, an individual Bessemer taxpayer, has intervened as plaintiff to seek unspecified damages for herself and others in a class of sewer rate payers. Green's state court quo warranto action was pending when Pugh Construction filed bankruptcy, and the debtor promptly removed it to Bankruptcy Court under 28 U.S.C. §1452. It is now AP06-70045.

There have been four separate criminal trials in U.S. District Court and the debtor was convicted on several counts. However, sentencing is not set until March, 2007. The parties agreed that sentencing is likely to result in massive criminal restitution fines against Pugh Construction. Both parties have also acknowledged the possibility that appeal could further delay final resolution of the restitution issue.

On December 13, 2006, the debtor filed the motion at issue here. It was captioned **DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §105(a): (1)**

2

**AUTHORIZING PAYMENT OF VENDORS AND SERVICE PROVIDERS IN THE ORDINARY COURSE OF BUSINESS AND (2) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS <u>FOR PAYMENT OF VENDOR AND SERVICE PROVIDER OBLIGATIONS</u>** (BK Doc. 14). The court set a December 20, 2006 hearing on the motion to pay vendors (BK Doc. 14), and on two other motions (BK Docs. 13, and 15) that same day.

On December 19, 2006, the State of Alabama objected to Pugh Construction's proposal in Doc. 14, contending the Bankruptcy Code did not give such trade creditors a payment priority over other unsecured prepetition creditors. (BK Doc. 29, **LIMITED OBJECTION TO DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(a): (1) AUTHORIZING PAYMENT OF VENDORS AND SERVICE PROVIDERS IN THE ORDINARY COURSE OF BUSINESS AND (2) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF VENDOR AND SERVICE PROVIDER OBLIGATIONS**) The objection was also set for hearing December 20, 2006.

Orders have already been entered on BK Docs. 13 and 15. The court took the vendors motion and the objection under submission for decision after the hearing.

The debtor sought to pay 32 "vendors and service providers in the ordinary course of business" for a total $130,821.62. (Pugh Construction's Exhibit 1, admitted into evidence at hearing) The list included vendors who had billed the debtor for services during the month before its bankruptcy and which, the debtor stated, would normally have been paid pursuant to the terms of the invoices. The payment amounts ranged from a low of $21.26 to a high of $47,627.42. At the time of the hearing, the debtor represented that the 32 vendors were all of the debtor's civil creditors in Chapter 11; except for claims of Pugh Construction insiders, and the disputed claims of the <u>quo</u> <u>warranto</u> plaintiffs suing because of the criminal convictions.

Pugh Construction president Jerry Morrison testified that the construction company had approximately 27 employees left when it filed bankruptcy December 1, 2006. Morrison stated that by the end of the week of the hearing (Wednesday, December 20, 2006), the payroll would have been reduced to nine, who would probably be paid through December 31, 2006. Then,

3

Morrison said payroll would be further reduced to six, including himself. These employees, he said, would probably be paid through the end of March 2007 on a weekly basis.

The debtor offered five exhibits in support of its motion to pay vendors, including the detailed listing (Exhibit 1) of those to receive payment, the amounts due, invoice dates, and general descriptions of the services or products delivered. Exhibits 2, 3, 4, 5, included motions for payment of vendors and unpublished orders granting such motions in two other Chapter 11 cases in other bankruptcy courts in the Northern District of Alabama. The cases were from the Northern Division (at Huntsville); and the Southern Division (at Birmingham) respectively. One order approved payment of "ordinary course" vendors while the other order involved "critical vendors" and suppliers. Both of the cases cited involved operating entities which sought to reorganize an ongoing business. Neither involved a liquidating Chapter 11 case where operation was almost completely shut down, pending scheduled public auctions of all assets.

In arguments, Pugh Construction's counsel stated the vendors list included no employee salaries, no bonuses, no claims from insiders, no claims for equity holders, and no restitution claims. Thus, Pugh argued, the payment did not unfairly discriminate, since no other creditors were similarly situated to the trade creditors. Counsel stated the firm had always taken pride in keeping its accounts current and wished to pay off the vendors in this manner, rather than forcing them to wait to be included as a class to be paid at 100 percent at confirmation of a future Chapter 11 plan.

Pugh Construction described the approval of the motion as a more administratively convenient way to handle the claims from the debtor's, the estate's, and the court's standpoint. Doing otherwise, the debtor argued, would be more disruptive and costly for the estate. Pugh Construction never contended that the accounts in Exhibit 1 were "critical vendors."

The state's counsel did not dispute Pugh Construction's factual description of the nature of the claims on the list. However, the creditor/plaintiff argued that trade creditors are prepetition claimants and generally must be paid within the normal distribution order set by the Bankruptcy Code. The state contended that 11 U.S.C. § 105(a) provided no equitable leeway

4

for their priority payment, and urged that they be treated like all unsecured creditors would be.

After the close of the hearing, the court took the motion and the objection under consideration for a decision.

## CONCLUSIONS OF LAW

This court has jurisdiction of Pugh Construction's Chapter 11 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this contested matter, a core bankruptcy proceeding pursuant to 28 U.S.C. § 157(b), under 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court under 28 U.S.C. § 157(a) by the General Order of Reference of the United States District Courts for the Northern District of Alabama, signed July 16, 1984, As Amended July 17, 1984.

## I.

### The Bankruptcy Code's distribution/priority scheme normally requires that prepetition debts be dealt with in the plans of reorganization debtors.

The Bankruptcy Code mandates the order of distribution to certain creditors. 11 U.S.C. § 503 describes debts which are to be treated as administrative expenses; while 11 U.S.C. § 507(a) describes those claims which are entitled to a priority in bankruptcy distribution. 11 U.S.C. Section 1129(a) provides that a Chapter 11 plan can only be confirmed if these administrative expenses and priority claims are paid in full unless the holder of the claim agrees to a different treatment.

Pugh Construction has not alleged that these prepetition vendors hold either administrative expense claims or priority claims, and has not asked for special treatment under terms of either Section 503 or 507(a) of the Bankruptcy Code.

Amendments to the Bankruptcy Code which took effect October 17, 2005 do apply to this case, including new Section 503(b)(9). Section 503(b)(9) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under 502(f) of this title, including–
>
>> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor <u>in the ordinary course of such debtor's business</u>. (emphasis added)

5

However, Debtor's Exhibit 1, its pleadings, and its arguments, made no reference to when the goods and services were provided by the 32 vendors. Therefore, there is no evidence that this new section applies.

Pugh Construction asserted that it would be more administratively convenient to pay all these prepetition vendor claims through its motion, rather than to deal with them through a subsequent plan of reorganization. The debtor asserted that the motion could be approved under the authority of 11 U.S.C. § 105(a) which states "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." While Section 105(a) does authorize the court to issue orders implementing provisions of the Bankruptcy Code, it does not empower the court to change the Bankruptcy Code for the court's, or the debtor's convenience.

In recent years, 11 U.S.C. § 105(a) has been the vehicle for vigorous litigation urging equitable expansion of plain language of various code sections. One of the most active areas has come in the increasingly sophisticated approach to "first-day motions" presented to courts in new Chapter 11 cases.

Typically, counsel for new debtors-in-possession have urged courts to use Section 105(a) to allow payments to "critical vendors" for prepetition claims which would normally be classified as general unsecured debt. The argument is generally that a postpetition disruption of delivery (equipment, material, or inventory) to a business for which there is hope of survival, will cause its immediate collapse.

Published cases have involved vendors described as "critical" and companies which intend to continue an existing operation at least at the time of the hearing. Use of equity is often justified by the contention that collapse of a business will harm <u>all</u> parties, including the disfavored unsecured creditors. Many courts have found those arguments persuasive, including some lower courts in the Eleventh Circuit. The unpublished orders included in Pugh's hearing

6

Case 06-71769-CMS11    Doc 101    Filed 02/12/07    Entered 02/12/07 14:46:21    Desc
Main Document      Page 6 of 10

exhibits are examples.[1] See Capital Factors, Inc. v. Kmart Corporation, 291 B.R. 818, 822 (N.D. Ill. 2003); aff'd by In the Matter of: Kmart Corporation, 359 F.3d 866 (7th Cir. 2004); cert. denied Handleman Company v. Capital Factors, et al., 543 U.S. 986 (2004).[2]

Even in the "critical vendor"/continuing operation context, other courts have declined to adopt the less traditional, equitable 105(a) approach to gain a leeway that is not apparent in the code. See Capital Factors, 291 B.R. at 822-23. The Seventh Circuit's Kmart decision, which affirmed the District Court's Capital Factors, is the leading appellate interpretation. Capital Factors cited to the Eleventh Circuit's Shapiro v. Saybrook Manufacturing Company, Inc. (In re Saybrook Manufacturing Co., Inc.), 963 F.2d 1490 (11th Cir. 1992) as an example of the more traditional interpretation of the bankruptcy courts' equitable powers. However, it involved a Chapter 11 debtor's attempt to use cross-collateralization to borrow money postpetitition.

In Saybrook, the Chapter 11 debtor sought to use Sections 364 and 105(a) to grant a grossly undersecured prepetition creditor a "superpriority" postpetition security interest in all the unencumbered assets of the bankruptcy estate. The Eleventh Circuit held that the bankruptcy court could not use its equitable powers to vary the Section 507 priority order of claims and expenses against the bankruptcy estate. However, this court has not found an Eleventh Circuit case specifically on point with the vendors' motion in Pugh Construction.

Additionally, published cases in which lower courts have allowed such payments under Section 105(a) appear to have required a fairly detailed factual showing that payment was necessary before doing so. And when courts have granted such motions, they have frequently placed stringent rules on the disbursements to optimize chances of debtors' survival and protect

---

[1] Some of these cases apply the "critical" designation by justifying the request under Section 363(b)(1) which provides, " The trustee (or Chapter 11 debtor-in-possession), after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, ..." Specifics of the legal arguments differ, as do the facts, in published cases from around the country.

[2] In Capital Factors/Kmart, the bankruptcy court had approved Kmart's "critical vendor" motion over objection, and Kmart paid out $300 million based on the lower court order. Nevertheless, the district court and then the Seventh Circuit Court of Appeals reversed the Bankruptcy Court. The District Court decision, in particular, provided a compact summation of the split of authority as it stood in 2003 on this developing area of bankruptcy law.

the interests of all parties. See In re Tropical Sportswear International Corporation, et al., 320 B.R. 15 (M.D. Fla. 2005) as an example.

## II.

**Debtor has presented no justification in fact, law or equity
for payment of prepetition vendors. The court must deny its request as pleaded**.

There has been no allegation in this case that any of these vendors are "critical vendors". This a Chapter 11 in which, from the date of filing and prior to the date of filing, the corporate debtor is and was moving toward a complete liquidation of its assets. In fact, this court has already entered an order authorizing the sale of all Pugh Construction's assets. As evidenced by its schedules, this debtor was not experiencing financial difficulty. It was current on the payment of its prepetition operating expenses, except for the vendors made subjects of this motion. They held outstanding invoices only for the month preceding bankruptcy. Pugh Construction's problems arise from the general consequences and impending criminal penalties from the federal prosecution/convictions; and from the impending civil penalties and/or claims arising out of the Jefferson County quo warranto suit.

The debtor chose to file this voluntary Chapter 11 case. 11 U.S.C. § 1121 provides that Chapter 11 debtors can file a plan; and classify claims or interests in the plan pursuant to Section 1122. Section 1122(b) specifically provides that "A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." Pugh Construction could propose a plan in which some or all of the prepetition vendors (claims ranging from $21.26 to $47,627.42) are included in this administrative convenience class.

Section 1125 provides that the debtor shall file a disclosure statement and after the disclosure statement is approved the debtor can solicit acceptance of the plan pursuant to Section 1126. Creditors are allowed the opportunity to vote on the plan to determine if it should be confirmed pursuant to Section 1129.

In other words, the Bankruptcy Code provides a method for the debtor to pay in full an

8

Case 06-71769-CMS11    Doc 101    Filed 02/12/07    Entered 02/12/07 14:46:21    Desc
Main Document    Page 8 of 10

administrative convenience class of creditors, but it is within the context of confirmation of a plan which has been subject to the Code's requirement for plan confirmation. The debtor proposes to skip the confirmation process as to one group of creditors, all the prepetition vendors, but at the same time enjoy the protection of the Bankruptcy Code in its dispute with the federal government and the state of Alabama.

Roland Pugh Construction, Inc., is a long-time fixture in the business community of Tuscaloosa County. It is certain that many of the vendors and service providers on the list in Exhibit 1 have likewise been long-time business associates of the construction company. It is commendable that Pugh Construction has taken pride in keeping its trade accounts current, and that it wishes to protect its vendors.

Unfortunately, the sequence of events that led to the corporation's 2005 indictments, the <u>quo</u> <u>warranto</u> civil suit, subsequent criminal indictments and convictions; and the filing of this liquidating Chapter 11 bankruptcy, have stripped it of its ability to do so.

The debtor in this case is completely liquidating its assets, much the same as a chapter 7 bankruptcy except the debtor is remaining its own trustee. Convenience of the court or the debtor, however inviting, does not rise to the level of "necessary or appropriate to carry out the provisions of this title" as specified by the code.

## CONCLUSION

Consequently, **DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 § U.S.C. 105(a): (1) AUTHORIZING PAYMENT OF VENDORS AND SERVICE PROVIDERS IN THE ORDINARY COURSE OF BUSINESS AND (2) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS FOR <u>PAYMENT OF VENDOR AND SERVICE PROVIDER OBLIGATIONS</u>** (BK Doc. 14) must be **DENIED;** and the State of Alabama's **LIMITED OBJECTION TO DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(a): (1) AUTHORIZING PAYMENT OF VENDORS AND SERVICE PROVIDERS IN THE ORDINARY COURSE OF BUSINESS AND (2) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF VENDOR AND**

9

**SERVICE PROVIDER OBLIGATIONS.** (BK Doc. 29) must be **SUSTAINED**.

**DONE and ORDERED** this February 12, 2007.

/s/ C. Michael Stilson

C. Michael Stilson

United States Bankruptcy Judge